UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

- - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

NING XI,

        Defendant.

_____/  **INDICTMENT**

The Grand Jury charges:

## **INTRODUCTION**

At all times pertinent hereto, the following relevant facts were true:

1. From in or about August 1997 until in or about October 2015, Defendant was employed as a professor in the Department of Electrical and Computer Engineering at Michigan State University (MSU) in East Lansing, Michigan. Defendant obtained tenure during this period, and eventually rose to the position of Distinguished Professor and Director of the Robotics and Automation Laboratory at MSU.

2. The Institute of Electrical and Electronics Engineers (IEEE) is a non-profit corporation headquartered in New York City, New York. The IEEE is a professional organization with worldwide membership that enjoys international prestige within the scientific community. Its membership of over 420,000 engineers resides in over 160 countries, and it sponsors conferences, professional and educational activities, and technical publications. There are approximately 39 "Societies" within IEEE, each of which focuses on a specific research field.

Each Society includes a Technical Advisory Board, an Executive Committee, and an Administrative Committee that serves as the management staff of that Society.

3.      Defendant joined IEEE in 1989, and became a "Fellow" in 2007. Fewer than one-tenth of one percent of IEEE members are designated as Fellows, and as such Defendant enjoyed a position of special trust and confidence within IEEE. Defendant was a member of the Robotics and Automation Society (RAS) within IEEE, and was a member of the RAS Administrative Committee during 2013 to 2015.

4.      Beginning in January 2011, Defendant went on sabbatical leave from MSU to assume an administrative position at City University of Hong Kong (CUHK) as the Chair Professor of Mechanical Engineering. Although Defendant initially requested a one-year leave of absence, he extended his sabbatical each year

5.      In September 2013, CUHK sent a verification-of-employment letter to MSU officials requesting confirmation that Defendant was no longer employed at MSU. In response, MSU officials contacted CUHK, and were informed that Defendant had obtained a tenured professor's position at CUHK. MSU officials informed CUHK that Defendant was still a tenured professor at MSU, and also communicated a demand to Defendant that he return and resume his duties at MSU because holding a tenured position at another university was a violation of the terms of Defendant's employment with MSU. Defendant then resigned from CUHK and returned to MSU in June 2014

6.      During September 2015, MSU officials became aware of information indicating that Defendant had accepted another academic position in Hong Kong, this one at the University of Hong Kong as the Chair Professor for the Department of Industrial and Manufacturing Systems Engineering, again in violation of the terms of Defendant's employment with MSU. Defendant's

2

MSU superiors recommended that he receive a six-month suspension from MSU, and Defendant responded by tendering his resignation in October 2015, effective November 1, 2015.

7. By January 2016, Defendant had returned to the University of Hong Kong and had been appointed as the Chair Professor of Robotics and Automation, as well as the Director of the Emerging Technologies Institute.

8. The process for obtaining reimbursement from MSU for official travel involves the employee submitting his/her receipts to their respective Department secretary, that secretary preparing an initial expense report based on the receipts, sending the report by electronic mail to the employee for approval and signature, and then submission of the employee's signed report to approval authorities for final review and payment authorization.

9. Between January 2011 and December 2015, Defendant submitted travel reimbursement claims to MSU's travel office that resulted in payments to him from MSU accounts of approximately $225,516 USD.

10. The process for organizing, carrying out, and closing IEEE conferences generally involved the drafting and submission of an application to the cognizant IEEE society by a conference volunteer, review and editing of that application by society staff, and submission to society management for approval. Once a conference was approved, its organizers submitted a detailed budget to the society, including an anticipated profit/loss statement, and opened a conference bank account into which IEEE society funds to support the conference were deposited. Each conference had a designated Chair and Treasurer, and those officers were authorized to draw on the account and were also expected to conduct oversight of all checks paid from the account. After a conference ended, the Chair and Treasurer were expected to close the conference account and to disburse the remaining surplus funds to the sponsoring IEEE society,

and to any non-IEEE sponsors who had contributed to a conference. Typically, conference accounts were closed between six to nine months after a conference ended.

11. Between 2005 and 2015, Defendant regularly served as the conference chair for IEEE conferences. These conferences included, but were not limited to: the 2008 International Conference on Robotics and Biometrics (ROBIO 2008) in Bangkok, Thailand; the 2009 Nanotechnology Materials & Devices Conference (NMDC 2009) in Traverse City, Michigan; the 2009 International Conference on Intelligent Robots and Systems (IROS 2009) in St. Louis, Missouri; the 2013 Nano/Molecular Medicine and Engineering Conference (NanoMed 2013) in Phuket, Thailand; the 2014 International Conference on Robotics and Automation (ICRA 2014) in Hong Kong, People's Republic of China; the 2015 International Conference on Nano/Micro-Engineered and Molecular Systems (NEMS 2015) in Xi'an, People's Republic of China; and ROBIO 2015, in Zhuhai, People's Republic of China.

12. During the period from 2008 to 2016, Defendant submitted travel reimbursement claims to the RAS of IEEE, and to the treasurer of the named IEEE conferences for which he served as chair, that resulted in payments to him from those accounts of approximately $1,012,177 USD.

**(WIRE FRAUD)**

Beginning not later than during December 2008 and continuing until at least July 2016, in the Southern Division of the Western District of Michigan, and elsewhere, the Defendant,

NING XI,

having devised, and for the purpose of executing, a scheme or artifice to defraud, transmitted or caused to be transmitted by means of wire communication in interstate or foreign commerce writings, signs, signals, pictures, or sounds.

Specifically, Defendant submitted approximately 54 receipts for air travel that had been fabricated, altered, or previously refunded, in connection with travel-reimbursement claims to MSU that resulted in payments to him of approximately $183,778 USD. Defendant also submitted approximately 90 receipts for air travel that had been fabricated, altered, or previously refunded, in connection with travel-reimbursement claims to both the RAS of IEEE and the Treasurer of the following IEEE conferences: ROBIO 2008, IROS 2009, NanoMed 2013, ICRA 2014, and ROBIO 2015, that resulted in payments to him of approximately $379,412 USD. In the course of submitting these claims, Defendant transmitted wire and electronic communications to MSU employees in East Lansing, to officers of IEEE in New York, and to the Treasurer of the named IEEE conferences in Oklahoma. As a result of the claims submitted by Defendant, he received payments from MSU, IEEE, and the Treasurer of the named IEEE conferences. In most cases, these payments were made in the form of checks issued to Defendant which he deposited into his account at MSU Federal Credit Union (MSUFCU) in Okemos, Michigan, causing the transmission of wire and electronic communications between MSUFCU and the financial institutions that held the accounts upon which the checks were

5

drawn. On numerous other occasions, claims that Defendant submitted to IEEE and MSU were paid by electronic fund transfer, causing the transmission of wire and electronic communications. 18 U.S.C. § 1343

## **FORFEITURE ALLEGATION**
(Wire Fraud)

The allegations contained in this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

Upon conviction of the offense in violation of 18 U.S.C. § 1343 set forth in this Indictment, the Defendant,

NING XI,

shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The property to be forfeited includes, but is not limited to, the following:

1. PERSONAL PROPERTY:

    a. $3,177.78 seized from the Michigan State University Federal Credit Union Account No. 132012, held in the name of Ning Xi and Li Xi; and

    b. 2008 Porsche Cayenne, VIN: WP1AA29P58LA20430 registered to Ning and Li Xi.

2. REAL PROPERTY: The condominium at 35 Commonwealth Avenue Unit 303, Newton, Massachusetts 02467 titled in the name of Ning Xi and Li L. Xi and all property rights conveyed via the Unit Deed thereto.

3. MONEY JUDGMENT: A judgment in the amount of at least $563,190, which represents the proceeds obtained from the offense charged in this Indictment, less any amounts recovered from the forfeiture of the personal property and real property listed above.

4. SUBSTITUTE ASSETS: If any of the property described above, as a result of any act or omission of the defendant:

      a. cannot be located upon the exercise of due diligence;

      b. has been transferred or sold to, or deposited with, a third party;

      c. has been placed beyond the jurisdiction of the court;

      d. has been substantially diminished in value; or

      e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)
18 U.S.C. § 1343

A TRUE BILL

*/s/ Robert K. Gillespie*
_____
GRAND JURY FOREPERSON

ANDREW BYERLY BIRGE
United States Attorney

*/s/ H. W. Frank*
_____
HAGEN WALTER FRANK
Assistant United States Attorney

8