UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                                      No. 1:18-CR-226

v.

NING XI,                                            Hon. Robert J. Jonker
                                                              Chief United States District Judge

       Defendant.
_____/

## RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE

Now comes the United States of America by and through its attorneys, United States Attorney Andrew Byerly Birge and Assistant United States Attorney Hagen W. Frank, and submits this opposition to defendant Xi's motion to exclude evidence that (1) payments he received from IEEE conference budgets, ostensibly as reimbursement for costs incurred in his capacity as the chair of those conferences, far exceeded reimbursement payments made to the chairs of other IEEE conferences (R.87: Def.'s Mot. PageID689); (2) any mention by witness Sheng, who served as the treasurer for the IEEE conferences listed in the Indictment and who wrote all of the conference checks payable to Defendant that the Government will offer as evidence, that one of the reasons he never questioned the legitimacy of Defendant's reimbursement claims is because Defendant is a recognized authority in his field (and was so within IEEE at the time) and Sheng was reluctant to challenge him based on his upbringing (id., PageID.697); and (3) evidence that Defendant violated various IEEE policies related to closing out conference budgets and making claims against conference funds long after a conference had ended (id., PageID.698).

The motion should be denied because, with respect to Defendant's receipt of conference funds and his non-compliance with IEEE procedures, Defendant's conduct as the chair of IEEE conferences is at the center of the factual landscape of the case. Whether Defendant dealt squarely with IEEE in his largely unsupervised capacity as a conference chair – where access to conference funds was available only to him and his protégé Sheng – goes directly to the question of whether he had the intent to defraud IEEE. Defendant opposes admission of evidence on this matter by characterizing it as proof of, at worst, "excessive and inappropriate conference spending" (R.87: Def.'s Mot. PageID.689), but deciding whether Defendant's conduct as a conference chair was simply imprudent or was instead fraudulent – whether he spent the funds on conferences or on himself – is a question for the jury.  Because it will be offered for the proper purposes of showing plan, purpose and intent to use his position as conference chair, and his relationship with Sheng, to defraud IEEE under Fed. R. Evid. 404(b), the evidence should be admitted.

With respect to presenting evidence that one of the reasons Sheng did not question Defendant is that he was socialized not to question an authority figure like Defendant, the Government thought it had made clear that it is not going to present cultural-expert evidence, having conceded that it views such generalizations as unreliable.   (Id. at PageID.706.) Notwithstanding that concession, Defendant chastises the Government for seeking to put on evidence of "an inaccurate stereotype" (id. at 697), but if Sheng were to explain that his upbringing is one of the reasons he never thought to question Defendant, then that would have nothing to do with any stereotype or societal generalization.   The Government intends to ask

2

Sheng what was in his own mind, not to ask the jury to assume that something was in Sheng's mind based on a stereotype.

## **Argument**

Evidence that Defendant received payments that were unprecedented and orders of magnitude more than what other chairs received when they hosted comparable conferences, and that it is a gross exploitation of conference funds for a chair to travel to several dozen different cities for one conference, should be admissible to prove his plan to defraud IEEE.[1]  Rule 404(b) provides that other acts by a defendant may be introduced at trial if the purpose for the evidence is to establish a probative issue at trial rather than to show bad character.  The Rule states in pertinent part that "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ."

The Sixth Circuit has established a three-step inquiry for admitting Rule 404(b) evidence.  That inquiry asks:

1)   did the act occur? (reviewed for clear error);

2)   does act have a legitimate basis for admission? (reviewed *de novo*); and

---

[1] The evidence will come in the form of testimony from Richard Jannuzzi, who was, and is, the Director, Business Operations, IEEE Meetings, Conferences & Events. The Government will also call Brigette Cardenas, an internal auditor of IEEE, who worked on IEEE's internal audit of the ICRA 2014 conference.  Cardenas has audited over 50 IEEE conferences, and will testify that payments made to Defendant were grossly outside the norm of any of those conferences, as was the travel that Defendant claimed to have taken in support of that conference.

    3)    is its legitimate purpose significantly outweighed by unfair prejudice?

(reviewed for abuse of discretion).

United States v. Wells, 211 F.3d 988, 998 (6th Cir. 2000).

    If the charged crime requires intent to defraud, 404(b) evidence may be used to demonstrate fraudulent intent, regardless of any defense offered by the defendant. United States v. Gold Unlimited Inc., 177 F.3d 472, 487 (6th Cir. 1999); United States v. Brown, 147 F.3d 477, 483 (6th Cir. 1998).  Furthermore, the Sixth Circuit has said that Rule 404(b) evidence relating to fraudulent intent is unusually probative, as fraudulent intent is ordinarily not easily proved.  Gold Unlimited, 177 F.3d at 488; Morganroth & Morganroth v. DeLorean, 123 F.3d 374, 379 (6th Cir. 1997).  This same rule has been applied by other courts to other crimes requiring proof of fraudulent intent.  United States v. Grissom, 44 F.3d 1507, 1513 (10th Cir. 1995) (upholding admission of evidence that defendant falsified hourly records submitted to unions in trial for submitting false statements to a bank in connection with a loan).

    Consistent with the authority cited above, the fact that Defendant traveled to several dozens of cities around the world, ostensibly in support of ICRA 2014 (which was held in Hong Kong while Defendant resided in Hong Kong)[2] during his sabbatical from Michigan State

---

[2] Defendant supports his argument by pointing out that each conference is unique, and arguing from this that comparing chair reimbursements from one conference against another could only produce relevant data if all of the details of each conference were taken into consideration. (R.87: Def.'s Mot. PageID.692.) This would be a fair point if the discrepancies were measured only in thousands of dollars.  They are not.  Jannuzzi will testify that ICRA 2015 was held in Seattle and chaired by an IEEE member who lived in Tennessee, and who received about $4,500 in reimbursements.  He will also testify that ICRA 2017 was held in Singapore and chaired by an IEEE member who lived in Singapore, and who received $0 in travel reimbursements.   As noted, ICRA 2014 was held in Hong Kong and was chaired by

University, did not follow IEEE policies related to conference financial management, and received payments from conference budgets far, far in excess of the norm, is offered for a proper purpose because it demonstrates that he had no qualms about exploiting both his position as a conference chair and his relationship with Sheng to obtain IEEE funds for his own purposes. Unless its probative value for this proper purpose is substantially outweighed by its potential to unfairly prejudice Defendant, it should be admitted.

It cannot be credibly asserted that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.   Violating the internal policies of a private organization lacks any real capacity to alarm, shock or incense, and there is therefore no need to exclude this probative evidence under Rule 403.

## CONCLUSION

The United States respectfully submits that the Court should deny Defendant's motion.

                                          Respectfully submitted,

                                          ANDREW BYERLY BIRGE
                                          United States Attorney

---

Defendant, who had lived in Hong Kong since 2011.  He received approximately $470,139 in "reimbursements," all in the form of checks written by Sheng ($149,885 of which was paid after the conference had ended). The differences between zero travel reimbursement paid to a chair who put on a conference in his/her hometown, $4,500 paid to a chair from Tennessee who put on a conference in Seattle, and $470,139 paid to Defendant who put on a conference where he resided, is a difference that obliterates the relevance of fine detail.  Similarly, the fact that ICRA 2015 returned a 21% surplus of $488,507 and ICRA 2016 returned a 17% surplus of $611,816 stands in stark contrast to the fact that ICRA 2014 returned a 4% surplus of $75,604.  Defendant can attempt to explain these order-of-magnitude discrepancies, but their relevance cannot reasonably be challenged.

Dated: 2 June 2019                                       /s/ H.W. Frank
                                                         HAGEN W. FRANK
                                                         Assistant United States Attorney